IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| JOHN CRAMER; JOHNNY BENITEZ; and PABLO CORTEZ, § § § | |
| Plaintiffs, § | |
| § | |
| v. § | EP-14-CV-281-KC |
| § | |
| THE LOGISTICS COMPANY, INC.; and RICHARD WESTMAN, § § § | |
| Defendants. § | |

**ORDER**

On this day, the Court considered Plaintiffs' Motion to Remand (the "Motion"), ECF No. 4, in the above-captioned case (the "Case"). For the reasons set forth below, the Court **GRANTS** the Motion.

I.   BACKGROUND

A.   Factual Background

Plaintiffs filed their Original Petition in the County Court at Law No. 5, El Paso County, Texas (the "State Court"), on September 25, 2013. *See* Defs.' Notice of Removal 31-40 ("Petition"), ECF No. 1.[1] By the Petition, Plaintiffs allege that Defendant The Logistics Company, Inc. ("Logistics") discriminated against them on the basis of their age in violation of the Texas Commission on Human Rights Act ("TCHRA"). *See* Pet. ¶¶ 20-28. Specifically, Plaintiffs allege that when Logistics assumed the responsibilities of their previous employer, Mike Garcia Merchant Security ("MGMS"), under a contract to provide security personnel and

---

[1] For page citations to all filings, the Court refers to the pagination assigned by the Court's electronic filing system.

logistics services to the United States military at Fort Bliss, Logistics refused to hire Plaintiffs for the positions they previously held at MGMS. *See id.* ¶¶ 8-28. Plaintiffs further allege that Logistics instead hired employees that are substantially younger than Plaintiffs. *See id.* ¶ 17.

In addition to their TCHRA claims, Plaintiffs also bring a tortious interference claim against Defendant Richard Westman ("Westman"), a current employee of Logistics and former employee of MGMS. *See id.* ¶¶ 29-32. Specifically, Plaintiffs allege that Westman, while acting as Plaintiffs' supervisor at MGMS, issued false disciplinary paperwork with the objective of making it difficult or impossible for Plaintiffs to transfer their positions to Logistics. *See id.* ¶ 14.

### B. Procedural Background

This is not the first time the Court encounters the parties and the Case. On October 22, 2013, Defendants removed the Case to this Court on the basis of both diversity and federal enclave subject matter jurisdiction. *See Cramer v. Logistics Co.*, No. EP-13-CV-333-KC, 2014 WL 652319, at *1 (W.D. Tex. Feb. 19, 2014) (hereinafter, "*Cramer I*"). Concluding that (1) Westman was not improperly joined, and (2) the evidence supporting federal enclave jurisdiction was "at best equivocal," the Court granted Plaintiffs' motion to remand on February 19, 2014. *See Cramer I*, 2014 WL 652319, at *4, *9.

On July 24, 2014, Defendants removed the Case again, this time asserting that evidence adduced through discovery strengthened their argument supporting federal enclave jurisdiction. *See* Defs.' Notice of Removal 4-13. Plaintiffs filed the instant Motion on September 12, 2014. *See* Mot. Defendants, in turn, filed their Response in Opposition to Plaintiffs' Motion to Remand ("Response"), ECF No. 5, on September 19, 2014, to which Plaintiffs filed their Reply in Support of Motion to Remand ("Reply"), ECF No. 9, on September 26, 2014.

## II. DISCUSSION

### A. Standard

28 U.S.C. § 1441(a), with exceptions not relevant here, permits a defendant to remove a civil action to a federal district court if the district court would have original jurisdiction over the case. *See Linton v. Great Lakes Dredge & Dock Co.*, 964 F.2d 1480, 1483 (5th Cir. 1992). The district court is required to remand the case to the state court if, at any time before final judgment, the court determines that it lacks subject matter jurisdiction over the case. 28 U.S.C. § 1447(c). When a party challenges the subject matter jurisdiction of the district court, the burden is on the non-movant to demonstrate that jurisdiction is proper. *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996). Courts construe removal statutes strictly against removal and in favor of remand. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988); *Brown v. Demco, Inc.*, 792 F.2d 478, 482 (5th Cir. 1986).

### B. Analysis

Contrary to *Cramer I*, the instant removal is based solely upon Defendants' assertion that this Court possesses federal enclave jurisdiction over Plaintiffs' claims. "Federal enclave jurisdiction is a subspecies of federal question jurisdiction, which is a form of subject matter jurisdiction vested in federal district courts by 28 U.S.C. § 1331." *Lawler v. Miratek Corp.*, No. EP-09-CV-252-KC, 2010 WL 743925, at *2 (W.D. Tex. Mar. 2, 2010) (citing *Blahnik v. BASF Corp.*, Civil Action No. C-06-410, 2006 WL 2850113, at *3 (S.D. Tex. Oct. 3, 2006)). "Because Congress has exclusive legislative jurisdiction over federal enclaves – pieces of territory carved out of states for federal use and control – courts have reasoned that federal courts must also have subject matter jurisdiction over controversies that arise on such enclaves." *Id.* (citing U.S.

3

Const., art. I, § 8, cl. 17; *Mater v. Holley*, 200 F.2d 123, 124-25 (5th Cir. 1952); *Blahnik*, 2006 WL 2850113, at *3). As a result, "federal courts have at least concurrent original jurisdiction" over "tort claims that arise on federal enclaves." *Id*. (citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006); *Mater*, 200 F.2d at 123-24). "Federal enclave jurisdiction does not require that any party to the suit be a federal employee, officer, or affiliate, or that substantive federal laws be at issue in the case[.]" *Camargo v. Gino Morena Enters., L.L.C.*, No. EP-10-CV-242-KC, 2010 WL 3516186, at *2 (W.D. Tex. Sept. 2, 2010) (citing *Mater*, 200 F.2d at 124-25).

Determining where a given claim "arose" in the context of federal enclave jurisdiction depends upon the nature of the specific claim at issue. *See, e.g.*, *Lawler*, 2010 WL 743925, at *6-7 (severing a plaintiff's defamation claim from his remaining causes of action where only the defamation claim arose on a federal enclave); *Sturgeon v. Jackson*, No. EP-10-CV-244-PRM, 2011 WL 3678472, at *5 (W.D. Tex. Feb. 9, 2011) (noting that while "the precise location of the employment discrimination is difficult to ascertain at this point, the alleged defamation clearly occurred on Fort Bliss"). Accordingly, this Court analyzes the existence of federal enclave jurisdiction for each of Plaintiffs' claims separately below.[2]

---

[2] In *Cramer I*, this Court noted that "[t]here is very little case law clarifying whether a court, when evaluating whether it may exercise federal enclave jurisdiction over a case, should restrict its inquiry to the allegations in the complaint, or if it should instead pierce the pleadings and conduct a summary inquiry that considers all jurisdictional evidence in the record." *See* 2014 WL 652319, at *3. Here, both Plaintiffs and Defendants invite this Court to consider the record in its entirety to determine the existence of federal enclave jurisdiction. *See* Mot. 12-13 (discussing, among other items, Plaintiffs' deposition testimony, Defendants' answers to interrogatories, and Westman's email messages to support argument in favor of remand); Resp. 7-12 (discussing, among other items, Westman's affidavit and Plaintiffs' deposition testimony to support assertion of federal enclave jurisdiction); *see also* Resp. 4-5 n.4 (encouraging the Court to go beyond the allegations in the Petition because "federal enclave jurisdiction is different than normal federal question jurisdiction cases [in that] Plaintiffs are more able to artfully plead around federal enclave jurisdiction by not including necessary elements of their causes of action (such as where events took place) in their well-pleaded complaint") (collecting cases applying artful pleading doctrine in the context of federal enclave jurisdiction). Because both parties agree that this Court is not limited to the allegations in the Petition, the Court assumes for the purposes of this Case that it may conduct a summary inquiry of all

### 1. Age discrimination claims

A federal court may exercise federal enclave jurisdiction over a state law claim challenging an adverse employment action when the decision at issue was "made on federal territory, because the locus of decision-making is where such a tort arises." *Camargo*, 2010 WL 3516186, at *2 (citing *Lawler*, 2010 WL 743925, at *3-4). "The fact that the employee's day-to-day job site is on a federal enclave, alone, is not sufficient for these purposes; rather, the location where management made the illegal decision controls." *Id*. (citing *Lawler*, 2010 WL 743925, at *3-4). The burden of demonstrating that the challenged employment action occurred on the federal enclave lies on the party seeking to invoke the federal court's jurisdiction. *See id*. at *3.

In support of their renewed effort to prove that Plaintiffs' age discrimination claims arose on Fort Bliss, Defendants raise the exact same arguments that this Court previously considered and rejected in *Cramer I*. Specifically, Defendants point to Westman's sworn affidavit averring that "(1) Westman drafted the challenged disciplinary paperwork on Fort Bliss; (2) Westman was physically present on Fort Bliss when he recommended that Logistics not hire Plaintiffs; and (3) Logistics made its decision not to hire Plaintiffs on Fort Bliss." *Cramer I*, 2014 WL 652319, at *4; *see also* Defs.' Notice of Removal 200-01 ("Westman Affidavit"); *id.* at 9, 11-13; Resp. 7-11. Unlike in *Cramer I*, however, where Plaintiff John Cramer ("Cramer") filed a contrary affidavit claiming to possess personal knowledge as to certain key jurisdictional facts, here, all Plaintiffs have since testified at deposition that "that they [have] no knowledge of who made the

---

jurisdictional facts in the record to determine whether Plaintiffs' claims arose on a federal enclave. *Accord Frank*, 128 F.3d at 922 (noting that "Courts will . . . typically look beyond the face of the complaint to determine whether removal is proper"); *Federico v. Lincoln Military Hous.*, 901 F. Supp. 2d 654, 664 n.2 (E.D. Va. 2012) ("The Court finds that Plaintiffs' reliance on the well-pleaded complaint rule in this case is misplaced" because "claims arising on a federal enclave provide a separate and independent basis for federal question jurisdiction."); *Blahnik*, 2006 WL 2850113, at *4 (considering interrogatory responses in the record to resolve the availability of federal enclave jurisdiction).

decision not to hire them and [have] no knowledge of where those individuals were when they made that decision." *See* Resp. 7.  As a result, Defendants argue, Westman's declaration stands alone as the sole reliable evidence concerning where Logistics made its decision not to retain Plaintiffs, and Westman definitively states under penalty of perjury that "[t]he decision not to hire Plaintiffs at The Logistics Company occurred on Ft. Bliss at Building 11500 on Ft. Bliss, Texas."  *See id.* at 7 (citing Westman Aff. ¶ 8).

In support of the Motion, Plaintiffs point to several pieces of evidence they claim undermine the veracity of Westman's affidavit.  At the outset, Plaintiffs cite to Logistics' letter to the Equal Employment Opportunity Commission ("EEOC"), which implies that Booker Taylor ("Taylor"), Logistics' Executive Vice President for Support Operations, made the ultimate hiring decisions in this Case.  *See* Letter from Audrey Berry, Logistics Director of Human Resources, to Carolyn G. Cobb, EEOC Supervisory Investigator ¶ 2.f (Mar. 29, 2013) ("EEOC Letter"), ECF No. 4-5; *see also* Mot. 9.  Plaintiffs note that it is undisputed that Taylor works in North Carolina at Logistics' corporate headquarters.  *See* Mot. 8-9, 12.  Moreover, although Taylor's decision was clearly based in large part on Westman's recommendations, Plaintiffs contend – and discovery confirms – that those recommendations were at least initially made at a point in time when Westman was not a Logistics employee.  *Compare* E-mail from Westman to Taylor (Oct. 8, 2012) ("Westman E-mail"), ECF No. 4-8 (recommending against retaining Plaintiffs as Fort Bliss security personnel), *with* Westman's Answers to Pl. Cramer's First Set of Interrogs. 5 ("Westman Interrogatory Answers"), ECF No. 4-9 (Westman admitting that he was first offered employment with Logistics on October 17, 2012), *and* Logistics' First Supplemental Answers to Pl. Cramer's First Set of Interrogs. 6 ("Logistics Interrogatory Answers"), ECF No. 4-10 (Logistics admitting that Westman was not offered employment until

October 17, 2012). As a result, Plaintiffs argue, the location where Westman made his recommendations is irrelevant to Plaintiffs' age discrimination claims; instead, the Court must look to Taylor's location to determine whether it possesses subject matter jurisdiction in the Case. *See* Mot. 12. Because Plaintiffs maintain that Defendants have produced insufficient evidence that Taylor was physically present on Fort Bliss when he reached the ultimate adverse employment decisions, Plaintiffs contend that this Court has no choice but to remand the Case to the State Court. *Id.*

Before proceeding with its analysis, the Court must resolve which individual – Westman or Taylor – made the decision not to retain Plaintiffs in order to determine "the locus of decision-making" in this Case. *See Camargo*, 2010 WL 3516186, at *2. While the Court agrees with Defendants that Westman "was so involved in the decision not to hire Plaintiffs that Plaintiffs have sued him personally," *see* Defs.' Notice of Removal 12, the evidence conclusively establishes that Westman was not even a Logistics employee at the time he made his initial hiring recommendations to Taylor, and thus could not possibly have acted as the ultimate decision-maker. *Compare* Westman E-mail, *with* Westman Interrog. Answers 5, *and* Logistics Interrog. Answers 6. Indeed, neither Logistics nor Westman appear to seriously dispute this point, as throughout this litigation both have consistently characterized Westman's role in the hiring process as merely providing "recommendations" to Taylor. *See* Defs.' Notice of Removal 3, 9, 12; Resp. 9-12; EEOC Letter ¶ 2.f; Westman Aff. ¶¶ 7-8. Accordingly, the Court concludes that Plaintiffs' age discrimination claims arose at the location where Taylor made his final decision not to retain Plaintiffs. *See Camargo*, 2010 WL 3516186, at *2.

Based on this determination, the Court finds that Defendants have failed to meet their burden of establishing that Plaintiffs' age discrimination claims arose on the enclave. While

Westman avers that he "made [his] recommendations for The Logistics Company not to hire Plaintiffs while . . . physically present on Ft. Bliss," and "discussed [his] recommendation not to hire Plaintiffs with [Taylor] while [they] were both physically present on Ft. Bliss," see Westman Aff. ¶¶ 7-8, he fails to allege the one fact that controls the outcome in this Case: that Taylor was physically present on Fort Bliss when Taylor decided not to retain Plaintiffs in their previously held positions. Although Westman represents that he discussed his recommendations with Taylor while they were both physically present on Fort Bliss, his affidavit provides no indication of when this discussion occurred, or even that it occurred prior to November 15, 2012, when Plaintiffs were notified of their adverse employment decisions. See Pet. ¶ 18. Similarly, Westman likewise fails to allege facts supporting the conclusion that this conversation represented the moment when Taylor decided against hiring Plaintiffs. As a result, Westman's affidavit leaves open the very real possibility that Taylor made his decision elsewhere. See Reply 5.

Furthermore, although Westman flatly declares that "[t]he decision not to hire Plaintiffs at the Logistics Company occurred on Ft. Bliss at Building 11500," this statement flows from Westman's belief that he was "tasked with determining which MGMS employees should be hired by The Logistics Company and which should not"; a responsibility he claims to have performed while physically present on Fort Bliss. See Westman Aff. ¶¶ 7-8. However, as noted above, it was Taylor, not Westman, who ultimately was empowered with final decision-making authority on Logistics' behalf. See EEOC Letter ¶2.f. Accordingly, the conclusory statements in Westman's affidavit are insufficient to establish the Court's federal enclave jurisdiction over Plaintiffs' age discrimination claims.

Lastly, the Court briefly addresses Defendants' alternative argument that, because

"Plaintiffs have alleged in this lawsuit that Westman's filling out [the disciplinary] paperwork was discriminatory and based on Cramer's age," the Court should look to the location where Westman drafted the purportedly false disciplinary paperwork to determine the origin of Plaintiffs' age discrimination claims. *See* Resp. 10. The flaw in this argument is that Plaintiffs' age discrimination claims are asserted solely against Logistics, *see* Pet. ¶¶ 20-28, and the record reveals that Westman drafted the relevant paperwork approximately three weeks *before* Logistics made him a formal offer of employment. *Compare* Defs.' Notice of Removal 28-29 (indicating that disciplinary paperwork was drafted on September 30, 2012, and October 1, 2012), *with* Westman Interrog. Answers 5, *and* Logistics Interrog. Answers 6. As a result, even if this Court were to read the Petition as asserting a separate right of recovery under a "discriminatory treatment" theory, the location where Westman drafted the disciplinary paperwork does not constitute the situs of Plaintiffs' age discrimination claims against Logistics.

This Court has repeatedly held that "the location where management made the illegal decision controls" the geographical origin of a plaintiff's employment discrimination claim. *Camargo*, 2010 WL 3516186, at *2 (citing *Lawler*, 2010 WL 743925, at *3-4); *see also Cramer I*, 2014 WL 652319, at *2. Here, absent any sworn declaration from the decision-maker himself, this Court is left speculating as to precisely where Taylor was when he reached the decision not to hire Plaintiffs. Because Defendants have the burden of demonstrating the existence of federal enclave jurisdiction, *Camargo*, 2010 WL 3516186, at *3, and because "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction," *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000), the Court concludes that it may not exercise federal enclave jurisdiction over Plaintiffs' age discrimination claims.

9

### 2. Tortious interference claim

"Texas, like most states, has long recognized a tort cause of action for interference with a prospective contractual or business relation[.]" *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W. 3d 711, 712-13 (Tex. 2001). "[T]o recover for tortious interference with a prospective business relation a plaintiff must prove that the defendant's conduct was independently tortious or wrongful." *Id.* at 726. To satisfy the "independently tortious or unlawful act" element, the plaintiff need not prove that the defendant committed an independent tort, but the plaintiff must at least "prove that the defendant's conduct would be actionable under a recognized tort," such as fraud or defamation. *Id.* at 726-27.

Here, Plaintiffs' tortious interference claim is based on the allegation that Westman "published false and/or misleading information regarding one or more of the Plaintiffs" with the intent of making it difficult or impossible for Plaintiffs to retain their positions once Logistics assumed MGMS's responsibilities under the contract. *See* Pet. ¶ 30. As a result, the parties agree that "the Court should look to the place where the defamatory publications were allegedly made in order to determine whether these claims arose from acts committed on a federal enclave." *Lawler*, 2010 WL 743925, at *5 (citing *Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 394 (Tex. App. 1993)); *see also* Mot. 15 (citing *Lawler*, 2010 WL 743925, at *5); Resp. 11 (citing *Lawler*, 2010 WL 743925, at *5); *accord Sturgeon*, 2011 WL 3678472, at *5.

The parties disagree, however, as to the result this standard yields when applied to the facts of the instant Case. Defendants argue that Plaintiffs' tortious interference claims arose on the enclave because Westman (1) drafted the disciplinary paperwork while physically present on Fort Bliss, and (2) discussed his recommendation not to hire Plaintiffs with Taylor while they were both physically present on Fort Bliss. *See* Resp. 11-12 (citing Westman Aff. ¶¶ 4, 7-8).

Because Plaintiffs lack any personal knowledge to the contrary, Defendants contend that they have met their burden of establishing this Court's subject matter jurisdiction over Plaintiffs' tortious interference claim. *Id.*

While Plaintiffs' dispute that Westman drafted the relevant paperwork on Fort Bliss, the heart of their argument is that, notwithstanding Westman's affidavit, this Court cannot state with any certainty that Taylor was ever physically present on Fort Bliss prior to the December 1, 2012, transition between MGMS and Logistics. *See* Mot. 14-16.

A close reading of Westman's affidavit confirms that Plaintiffs have the better of the argument. "[B]ecause 'publication,' in libel law, connotes the communication of defamatory material to a third person, it is self-evident that the substance and consummation of the tort occurs when and where the third person receives, reads, and comprehends the libelous matter." *See Totah v. Bies*, No. C 10-05956 CW, 2011 WL 1324471, at *2 (N.D. Cal. Apr. 6, 2011) (quoting *Lamontagne v. Craig*, 632 F. Supp. 706, 709 (N.D. Cal. 1986)) (internal quotation marks omitted); *see also Lawler*, 2010 WL 743925, at *5; *Sturgeon*, 2011 WL 3678472, at *5. Here, while Westman states in his affidavit that he discussed his recommendation not to hire Plaintiffs with Taylor while they were both physically present on Fort Bliss, this averment does not, as Defendants claim, establish that the "substance and consummation" of Plaintiffs' tortious interference claim occurred on the enclave. To the contrary, for the Court to reach such a conclusion, it would need to draw at least two inferences in Defendants' favor: namely, that (1) Westman's in-person conversation with Taylor on Fort Bliss occurred prior to November 15, 2012, when Plaintiffs were notified of their adverse employment decisions, and (2) Westman actually published the alleged defamatory material to Taylor during this conversation.

Specifically, if Westman's discussion with Taylor occurred *after* Taylor had already

11

finalized his decision not to retain Plaintiffs, then the discussion itself could not possibly constitute tortious interference, and therefore could not serve as the locus of Plaintiffs' tortious interference claim. Similarly, if the content of Westman's discussion with Taylor did not specifically include Westman relaying the purportedly false information regarding Plaintiffs' work performance, then no "publication" occurred on the enclave, and Plaintiffs' tortious interference claim necessarily arose at another moment in time, or not at all. After a close review of Westman's affidavit, the Court concludes that Defendants have failed to produce evidence on either of these points. Without it, the Court "must presume that a suit lies outside [its] limited jurisdiction." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *see also Acuna*, 200 F.3d at 339 ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."). Accordingly, the Court concludes that it cannot exercise federal enclave jurisdiction over either of Plaintiffs' claims.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion, ECF No. 4, is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the clerk shall remand the Case for lack of subject matter jurisdiction to the Texas County Court at Law No. 5, El Paso County, Texas.

The clerk shall close this case.

**SO ORDERED**.

**SIGNED this 14th day of January, 2015.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

12